DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ABNER LOPEZ,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2025-0319

_____

July 10, 2026

Appeal from the Circuit Court for Pinellas County; Julie L. Sercus, Judge.

Blair Allen, Public Defender, and Karen M. Kinney, Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Analise V. Walker, Assistant Attorney General, Tampa, for Appellee.


SMITH, Judge.

Abner Lopez appeals his judgment and sentence rendered after a jury found him guilty of trafficking in fentanyl by possessing four grams or more but less than fourteen grams. On appeal Mr. Lopez argues the trial court erred in denying his pretrial motion to suppress and in denying his motion for judgment of acquittal. We find no merit in Mr. Lopez's arguments related to the denial of his motion for judgment of acquittal.

With regard to Mr. Lopez's argument related to the denial of his pretrial motion to suppress, "to raise an error on appeal, a contemporaneous objection must be made at the trial level when the alleged error occurred." *Carr v. State*, 156 So. 3d 1052, 1062 (Fla. 2015) (quoting *J.B. v. State*, 705 So. 2d 1376. 1378 (Fla. 1998)), *abrogation on other grounds recognized by Cruz v. State*, 372 So. 3d 1237 (Fla. 2023). We acknowledge that section 90.104(1), Florida Statutes (2023), states that "[i]f the court has made a definitive ruling on the record admitting . . . evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal." However, section 90.104(1) does not apply in this situation. Here, the trial court denied Mr. Lopez's pretrial motion to suppress, which argued officers unlawfully conducted a warrantless search of his pockets and produced a baggie that was found to contain fentanyl. In denying the motion, the trial court found that the officer had responded to an active overdose and that both the community caretaking and the emergency medical exceptions to the warrant requirement applied. *See S.P. v. State*, 331 So. 3d 883, 892 (Fla. 2d DCA 2022) ("[O]fficers engaged in a so-called 'community caretaking' role . . . may conduct a limited search of persons and property when it is necessary to ensure safety."); *Fields v. State*, 105 So. 3d 1280, 1282 (Fla. 2d DCA 2013) (holding an officer may conduct a warrantless search of a person if the officer fears the person is experiencing an exigent medical emergency).

At trial, the State moved to introduce the evidence found in Mr. Lopez's pocket to which Mr. Lopez's counsel <u>affirmatively</u> stated, "no objection"—an about-face on his position to the very evidence that Mr. Lopez sought to suppress in his pretrial motion. Under *Carr*, counsel's affirmative statement of "no objection" resulted in an abandonment or

waiver of the arguments made in his motion to suppress. *Carr*, 156 So. 3d at 1062; *see also Xolo v. State*, 396 So. 3d 416, 419 (Fla. 6th DCA 2024) (explaining that the court was bound to follow *Carr* and holding that the defendant did not preserve his challenge to the admission of his confession where the attorney who unsuccessfully argued a pretrial motion to suppress the confession affirmatively stated "no objection" when the State sought to admit the confession at trial); *Reed v. State*, 350 So. 3d 836, 838 (Fla. 1st DCA 2022) (holding that by stating "no objection" in response to the introduction of a recording into evidence at trial, the appellant waived any argument that the trial court erred in denying his pretrial motion to suppress the recording); *Henry v. State*, 230 So. 3d 56, 57 (Fla. 1st DCA 2017) (same). Accordingly, this issue was waived and not preserved for appeal.

Affirmed.


KHOUZAM, Judge, Concurs.
ATKINSON, Judge, Concurs in result only.


ATKINSON, Judge, Concurring in result only.

Abner Lopez appeals his conviction for trafficking in fentanyl, arguing, among other things, that the trial court erred in denying his motion to suppress evidence following a warrantless search of his person. I concur in result and write to address the merits of the suppression issue as well as the issue of whether the pretrial denial of Mr. Lopez's motion to suppress evidence was preserved for appellate review pursuant to section 90.104(1), Florida Statutes (2025), even though, during the trial, defense counsel stated that he had no objection

3

to the admission of the evidence Mr. Lopez had sought to suppress in the denied motion.

## Background

On December 27, 2023, while supine on the floor of a laundromat, Mr. Lopez was searched without a warrant by a law enforcement officer. The officer had been called to the scene by the fire department, members of which were treating Mr. Lopez for an overdose following a 911 call reporting that Mr. Lopez had been found "laying [sic] on the floor" with "a rolled-up . . . receipt or dollar bill nearby." The officer testified that, upon his arrival, Mr. Lopez was "laying [sic] on his back on the floor" while the fire department was treating him, and that Mr. Lopez was "yelling occasionally." The officer described Mr. Lopez as "unconscious," explaining that "he would just kind of sit up and yell and then kind of lay [sic] back down or kind of tense up." Mr. Lopez was not capable of conversation. The officer was informed by the fire department that Mr. Lopez's respirations had initially been very low, but they had administered NARCAN, after which Mr. Lopez was able "to breathe on his own without issues." The officer asked the medical personnel if they had performed their own search of Mr. Lopez, and the medical personnel stated that they had not.

Before conducting the search, the officer observed "white powder" on Mr. Lopez's nose and "a small bulge in his front right coin pocket." The warrantless search was then performed both for Mr. Lopez's safety—"to make sure he ha[d] no other narcotics on him that could contribute to a future overdose"—and for the safety of the medical personnel. During the search, the officer found inside Mr. Lopez's pocket a small plastic container and a baggie containing white powder that was determined to be a mixture of acetyl fentanyl and fentanyl.

4

Prior to trial, Mr. Lopez filed a motion to suppress all the tangible evidence seized during this warrantless search. The motion to suppress was denied on October 28, 2024. The trial commenced several months later, on January 29, 2025. Just before the trial began, Mr. Lopez's new defense counsel made the court aware that Mr. Lopez was moving forward with the trial because prior counsel "ran the motion to suppress" and "the State had indicated all negotiations were off." During the trial, when the State moved to introduce the evidence obtained from Mr. Lopez's pocket as State's Exhibit 1, defense counsel stated that he had "[n]o objection." Then, at the close of the trial, defense counsel "renew[ed] our prior objection—our prior motions and objections." After the court asked if counsel "want[ed] to preserve any objections that ha[d] previously been made," defense counsel responded, "I don't believe there are any that would need preserving or were made. Just, again, renewing our [judgment of acquittal] argument."

## Discussion

Section 90.104(1) provides that, "[i]f the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Nonetheless, the State contends that Mr. Lopez abandoned the issue of whether the fentanyl obtained via the warrantless search of his person should be suppressed and that the issue has therefore not been preserved for appeal. In support of this proposition, the State relies on *Carr v. State*, 156 So. 3d 1052 (Fla. 2015). In *Carr*, the Florida Supreme Court held that,

> [w]hile section 90.104(1), Florida Statutes (2010), provides that, "[i]f the court has made a definitive ruling on the record admitting . . . evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal," the statute

5

does not apply to the facts of this case. Here, Carr's trial counsel objected to the school record's admission at a pretrial hearing, and the trial court ruled that the record was admissible. However, when the State offered the record into evidence during the guilt phase, Carr's trial counsel affirmatively stated "[n]o objection." In so doing, trial counsel abandoned her pretrial objections to the record's admissibility, and we decline Carr's invitation to revive them.

*Id.* at 1062. The State also relies on *Xolo v. State*, 396 So. 3d 416, 419 (Fla. 6th DCA 2024), wherein the Sixth District, relying on *Carr*, held that, "[l]ike the defendant in *Carr*, Xolo stated through counsel that he had no objection when the State offered the evidence at trial. He thus abandoned his pretrial objections." The State argues that even though he filed and obtained a ruling on a pretrial motion to suppress evidence, Mr. Lopez, like the defendants in *Carr* and *Xolo*, abandoned his pretrial objections when he stated at trial that he had no objection to the admission of the bag of fentanyl into evidence.

In *Carr*, Ms. Carr challenged "the admission of a school record on which [the victim's husband] listed Carr as an emergency contact for one of his and [the victim's] children shortly after [the victim's] murder." *Carr*, 156 So. 3d at 1062. At a pretrial hearing, the trial court had overruled Ms. Carr's objection to the admission of the school record. *Id.* Then, at trial, "when the State offered the record into evidence during the guilt phase, Carr's trial counsel affirmatively stated '[n]o objection.' " *Id.* The Florida Supreme Court explained that, "[i]n doing so, trial counsel abandoned her pretrial objections to the record's admissibility, and we decline Carr's invitation to revive them." *Id.* Acknowledging that section 90.104(1) provides that "[i]f the court has made a definitive ruling on the record admitting . . . evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal," the court

6

in *Carr* concluded that section 90.104(1) "does not apply to the facts of this case."  *Id.* (alteration in original) (quoting § 90.104(1)).

In *Xolo*, the defendant filed a pretrial motion attempting to suppress contested evidence—his confession—which was denied by the trial court.  369 So. 3d at 417.  Additionally, the trial court ruled at the pretrial hearing that the State could use child-hearsay statements under section 90.803(23), Florida Statutes (2022).  *Id.* at 418.  Both the confession and the child-hearsay statements "were admitted at trial without objection."  *Id.*  The Sixth District found that, "[b]ecause we are bound by *Carr*, we must conclude that Xolo did not preserve his challenge to his confession's admission.  Like the defendant in *Carr*, Xolo stated through counsel that he had no objection when the State offered the evidence at trial.  He thus abandoned his pretrial objections."  *Id.* at 419.  However, the Sixth District "flag[ged] [a] tension between the statute and the precedent [set by the *Carr* opinion] for another look by the Florida Supreme Court in an appropriate case."  *Id.*

> To be sure, someone in Emilia Carr's or Bacilio Xolo's position faces a conundrum.  Even after definitively ruling on admissibility, a court may still ask whether a party objects when the evidence is later offered at trial.  When a party has nothing new to add after a definitive ruling that the evidence is admissible, what should the response be when the court again asks whether there is any objection?
>
> A party either objects or does not.  If the response is yes, then the party has necessarily renewed the objection.  But that is what section 90.104(1) states is unnecessary to preserve the claim of error.  If the response is no, then under *Carr* the objection is abandoned and not preserved even though—once again—the statute explicitly says that "a party need not renew an objection to preserve a claim of error for appeal."  *Compare Carr*, 156 So. 3d at 1062 *with* § 90.104(1), Fla. Stat. (cleaned up).
>
> Qualifying the response with "pursuant to my prior objection" or "subject to my prior objection" does not resolve this conundrum.

7

> Consider what these examples, which were discussed at the oral argument in this appeal, are really saying. To refer to a prior objection, as both examples do, is to renew it. Even with a qualifier, the party would still be renewing the objection—exactly what the statute says is unnecessary.
>
> So long as *Carr* is good law, a party that has already received a definitive ruling on admissibility may have to renew the objection to admitting the evidence at every turn to preserve a claim of error for appeal despite section 90.104(1).

*Id.*

The Sixth District's reading of section 90.104(1) is well-taken. And I would agree that the Florida Supreme Court's decision in *Carr* is in tension with the meaning of the text of section 90.104(1)—but *only if* one reads the *Carr* opinion as holding that, after a definitive ruling has already been made as to the admissibility of evidence *at trial*, a party's response of "no objection" when a court again asks whether there is any objection to the admission of that evidence results in that claim of error being abandoned on appeal. Because doing so would be contrary to the meaning of the text of the statute, this court should carefully examine whether it is necessary to read *Carr* in that manner.

Unless there is a compelling reason to presume that the Florida Supreme Court ruled in *Carr* in a manner that is ostensibly in derogation of the meaning of the language of section 90.104, this court should not presume so, bound as we are to apply the statute according to the meaning of its text. *See Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021) ("In determining the meaning of a statute, we adhere to the supremacy-of-the-text principle—a principle recognizing that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.' " (quoting *Page v. Deutsche Bank Tr. Co. Americas*, 308 So. 3d 953, 958 (Fla. 2020))). The separation of powers compels us to defer to the text of the legislative enactment. *See Fla. Dep't*

8

*of Rev. v. Fla. Mun. Power Agency*, 789 So. 2d 320, 324 (Fla. 2001) ("Under fundamental principles of separation of powers, courts cannot judicially alter the wording of statutes where the Legislature clearly has not done so." (citing *Richardson v. Richardson*, 766 So. 2d 1036, 1043 (Fla. 2000))); *J.B. Harris, P.A. v. Virage Cap. Mgmt. LP*, 404 So. 3d 504, 508 (Fla. 3d DCA 2024) ("It would transcend our judicial power . . . to rewrite the statute.  This would violate the separation of the powers set forth in the Florida Constitution. Art. II, § 3, Fla. Const.").  Thus, while as an inferior court we are obliged to adhere to the holdings of Florida Supreme Court opinions, that obligation does not compel us to favor a reading of a Florida Supreme Court opinion that conflicts with the meaning of the text of an applicable statute over a permissible reading of the Florida Supreme Court opinion that is consistent with the meaning of the statute's text.  *See Westpark Pres. Homeowners Ass'n v. Pulte Home Corp.*, 365 So. 3d 391, 395 (Fla. 2d DCA 2023) ("It is not within the power of the judicial branch to change the statute's language.  Instead, '[t]he legislature is the proper branch of government to alter the statutory text.' " (quoting *Freeman as Tr. of Fiddlesticks Land Tr. U/A/D September 25, 1984 v. Berrin*, 352 So. 3d 452, 455 (Fla. 2d DCA 2022))).  In other words, *Carr* should not be read in a way that contradicts the statute if there is a way to read the opinion to be *consistent* with the statute.

As can be reasonably gleaned from the face of the opinions in *Carr* and *Xolo*, it appears that in the latter the Sixth District presumed that the initial ruling made by the trial court in *Carr* was an adjudication of the admissibility of the document *at trial*.  From that, the Sixth District reasonably deduced that the Florida Supreme Court must have reasoned that trial counsel's statement of "[n]o objection," *see Carr*, 156 So. 3d at 1062, was an affirmative abandonment of any pretrial objections.  *See*

9

*Xolo*, 369 So. 3d at 419 ("Like the defendant in *Carr, Xolo* stated through counsel that he had no objection when the State offered the evidence at trial. He thus abandoned his pretrial objections.").

There is nothing in the *Carr* opinion that explicitly indicates whether the initial pretrial ruling was to the admission of the record into evidence *at the hearing,* a ruling on the inadmissibility of the evidence *generally*—that is, not merely at the hearing, but also at trial—or a ruling solely for the purpose of determining the admissibility of the record *at trial.* And it is reasonably possible that the Florida Supreme Court premised its decision on a distinction between affirmatively abandoning a prior objection and failing to renew it, reasoning that the statute did not apply because "counsel abandoned her pretrial objections to the record's admissibility" by stating "[n]o objection." *Carr,* 156 So. 3d at 1062; *see also Montaque v. State*, No. 4D2025-0178, 2026 WL 885725, at *1 (Fla. 4th DCA Apr. 1, 2026) ("Counsel need not *renew* the objection to preserve the issue for appeal. But counsel, at trial, can *abandon* the issue by stating that he has 'no objection' when subsequently asked about it."); *Henry v. State*, 230 So. 3d 56 (Fla. 1st DCA 2017) (concluding that the statute did "not apply to the circumstances in the instant case" and explaining that "[p]ursuant to the Florida Supreme Court's decision in *Carr,* counsel's statement of 'no objection' acted to abandon or waive the prior motions to suppress." (citing *Carr,* 156 So. 3d at 1062)).

On the other hand, is it possible that the initial ruling made by the trial court in *Carr* was not that the document was inadmissible later *at trial,* but rather that the document was merely excluded from admission *at the pretrial hearing itself? See Carr,* 156 So. 3d at 1062 ("Carr's trial counsel objected to the school record's admission *at a pretrial hearing,* and the trial court ruled that the record was admissible. However, when

10

the State offered the record into evidence *during the guilt phase*, Carr's trial counsel affirmatively stated '[n]o objection.' " (emphasis added)). It is clear, at least, that the initial hearing in *Carr* was not on a motion to suppress. *See id.* And it would make sense for the Florida Supreme Court to conclude that "the statute d[id] not apply to the facts of th[e] case," *see id.*, if the earlier objection had been to the evidence's admissibility at the hearing. Upon that premise, it would be reasonable to conclude that the Florida Supreme Court had determined that there had never been a definitive objection to, and ruling on, the admissibility of the document *at trial.*

On the one hand, presuming that the hearing in *Carr* was on the issue of the record's admissibility at trial, it would be difficult to draw a pertinent distinction between the pretrial evidentiary ruling in that case and the denied motion to suppress in Mr. Lopez's case. Such a reading of *Carr* would indeed give rise to the "conundrum" identified by the Sixth District. *See Xolo*, 396 So. 3d at 419. If, on the other hand, the facts of *Carr* are read to infer that the initial objection was to the record being admitted *into evidence at the hearing*, then the opinion would be in line with the Sixth District's well-taken interpretation of section 90.104. That is, the admission of the record into evidence *at the hearing* over objection does not obviate the requirement to object to its admissibility *at trial.* In other words, the denial of the objection to admissibility at the hearing was not "a definitive ruling on the record admitting or excluding evidence" *at trial, see* § 90.104(1), and thus the statutory exception to the contemporaneous objection requirement would not be applicable.

In this case, the original evidentiary ruling on the motion to suppress *was*, of course, on the matter of whether the evidence would be excluded *at trial*, not an objection to admission during a pretrial hearing.

11

Because Mr. Lopez filed a motion to suppress prior to trial seeking suppression *at trial* of evidence obtained during the warrantless search and obtained a definitive ruling when the court denied his motion, Mr. Lopez did not need to renew that objection to preserve the issue for appeal—and later at trial his counsel acquiescing to the admission of the evidence, consistent with the earlier ruling on admissibility, with an unqualified assertion of "[n]o objection" did not render the argument unpreserved. *See* § 90.104(1) ("If the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

It is worth noting that had counsel for Mr. Lopez added one word to his response to the State's admission of the evidence at trial, there would be no doubt that under section 90.104(1), the issue would be preserved on appeal: "No [further] objection." The absence of a word such as *further* or *additional* should not render the protection of section 90.104(1) inapplicable; such a reading of the statute would be inconsistent with the ordinary meaning of its unqualified pronouncement that "a party *need not renew* an objection." *See id.* (emphasis added); *Xolo*, 396 So. 3d at 419 ("A party either objects or does not. . . . [T]he statute explicitly says that 'a party need not renew an objection to preserve a claim of error for appeal.' " . . . Even with a qualifier, the party would still be renewing the objection—exactly what the statute says is unnecessary." (first citing *Carr*, 156 So. 3d at 1062; and then quoting § 90.104(1)).

Yet it is possible that *Carr* does compel that result. While the *Carr* opinion—given its sparse recitation of the procedural facts underlying the initial determination of admissibility—could be read to infer that the initial evidentiary ruling in that case did not resolve the question of the

evidence's admissibility *at trial*, the manner in which the Florida Supreme Court explained its reasoning tends to suggest that it did. Recounting that "trial counsel objected to the school record's admission at a pretrial hearing," the court concluded that by later "affirmatively stat[ing]" at trial that she had no objection to the evidence's admission, Ms. Carr "*abandoned* her pretrial objections to the record's admissibility." *See Carr*, 156 So. 3d at 1062 (emphasis added). If the earlier ruling had not been on the admissibility of the evidence at trial— or on admissibility in general, including at trial—then what would Ms. Carr have been abandoning? She logically could not abandon something that was not already in existence—that is, a ruling on admissibility of the evidence *at trial*. By that logic, the *Carr* decision was based on facts not materially distinguishable from those of this case, and the opinion's reasoning would dictate a conclusion that the denial of Mr. Lopez's motion to suppress was not preserved for appellate review.

As pointed out by the Sixth District, doubt lingers as to the compatibility of the *Carr* decision with the statute it was applying, *see Xolo*, 396 So. 3d at 419, rendering preservation an inscrutable issue under the circumstances of this case. However, even if the issue was preserved for appellate review, Mr. Lopez's argument regarding the denial of his motion to suppress is unpersuasive.

While unreasonable searches and seizures are prohibited by both the Fourth Amendment to the United States Constitution and article I, section 12, of the Florida Constitution, and "[a]bsent a warrant issued by a neutral and detached magistrate, a search is per se unreasonable," *see Perez v. State*, 269 So. 3d 574, 577 (Fla. 2d DCA 2018) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)), there are exceptions to the warrant requirement germane to our analysis. "[O]fficers engaged in a

so-called 'community caretaking' role . . . may conduct a limited search of persons and property when it is necessary to ensure safety." *S.P. v. State*, 331 So. 3d 883, 892 (Fla. 2d DCA 2022) (first citing *State v. Brumelow*, 289 So. 3d 955, 956 (Fla. 1st DCA 2019); then citing *State v. Johnson*, 208 So. 3d 843, 845 (Fla. 1st DCA 2017)); and then citing *L.C. v. State*, 23 So. 3d 1215, 1219 (Fla. 3d DCA 2009)). This "community caretaking" exception is applicable here. The law enforcement officer performed his search after encountering a man of questionable consciousness who was yelling, being treated for a drug overdose, had unidentified white powder on his face, and had "a small bulge" from an unidentified object in his pocket. The officer testified that when responding to a "narcotics-related incident" like the one involved in this case, it is typical for "public safety purposes, including myself, the defendant, and any medical personnel or anybody around, [to] do a search to make sure there's no other contraband or anything on that person that could be harmful to anybody else or admitting into the medical facility." The warrantless search was a minimally intrusive means by which the officer could ascertain whether the object in Mr. Lopez's pocket presented a danger to himself or to the attending medical personnel. *See id.* ("The safety search must be objectively reasonable under the facts of the case. And reasonableness, in these contexts, is typically measured in terms of the search's intrusiveness and the circumstances' necessity.").

The warrantless search was also reasonable due to the ongoing "feared medical emergency" encountered by the officer. *Cf. Riggs v. State*, 918 So. 2d 274, 280 (Fla. 2005) ("[T]he 'emergency exception' permits police to enter and investigate private premises to preserve life . . . or render first aid, provided they do not enter with an accompanying intent

14

either to arrest or search." (alteration in original) (quoting *Hornblower v. State*, 351 So. 2d 716 (Fla. 1977))).  While "an officer may not continue her search once she has determined that no exigency exists," *see Rolling v. State*, 695 So. 2d 278, 293 (Fla. 1997) (citing *Anderson v. State*, 665 So. 2d 281 (Fla. 5th DCA 1995)), the exigency here was ongoing.  Mr. Lopez—yelling, noncommunicative, and with white powder on his nose—was continuing to display signs of active impairment due to an overdose when the officer searched him.  The officer's limited search, conducted both for Mr. Lopez's safety and the safety of the medical personnel, was necessary to respond to this active medical emergency.  *Cf. Fields v. State*, 105 So. 3d 1280, 1284 (Fla. 2d DCA 2013) (finding that exigency had dissipated when "[t]here was no testimony that Fields appeared to be under the influence of any drugs when [the officer] arrived, and nothing that [the officer] saw or testified to corroborated Fields' mother's initial report that Fields was agitated and beaten up.").

## Conclusion

Even if the issue was preserved, reversal would not be warranted because the trial court did not err by denying the motion to suppress.  However, under the authority of the Florida Supreme Court's opinion in *Carr*, 156 So. 3d 1052, the suppression issue was not preserved for appeal pursuant to section 90.104(1).  I therefore concur in result only.

_____

Opinion subject to revision prior to official publication.